Please all rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the Second Judicial District is now back in session and pursuant to adjournment. The Court of Appeal is now in session. Please be seated. Your Honor, this case on the Doctrine 2-14-0680 of the State of Illinois U.S. Constitution, the last case of the Judicial District, defendant to defendant, arguing on behalf of the defendant to defendant, Mr. Felicia Kirkwood. Arguing on behalf of the defendant that week, Mr. Sean Kinsella. Mr. Kirkwood. May it please the Court and Counsel, good afternoon, Your Honors. Mark Huettner moved in the trial court to withdraw his guilty plea to charges of driving under the influence and leaving the scene of an accident. And Mr. Huettner's motion to withdraw cited two bases for withdrawing his plea. First, he contended he was seriously ill on the day of his guilty plea. He was taking pain and anti-anxiety medication, which diminished his ability to understand and fully appreciate the proceedings. These medications were not new to him, were they? They were not new. For some time? Yes, his health condition is long-standing, and he testified in the trial court that he had been taking these for some time. The judge commented that he should have been used to the effects of these medications by that time, but that certainly doesn't mean that they still don't have effects. He was taking Dilaudid and anti-anxiety medication. But this was the first time where actually on the record the judge was engaging in a long colloquy, or were there other conversations between the judge and the past with the defendant? I'm not aware that there were any prior extensive colloquies. I believe all of the proceedings were conducted through counsel. Well, what about the conversations when the judge detected an odor of alcohol and ordered the defendant into pretrial services? How about those conversations? Do you recall those from the record? I recall that that occurred. I don't recall precisely who said what. I don't recall that it was the judge who said, I smell an odor of alcohol. No, it was reported to the judge, and the judge ordered him into pretrial services. And then later on, the judge was following up and asked the defendant how he was doing. I'm referring to November 29th of 2012. He told the judge, the defendant told the judge, he's been reporting to pretrial services, and he said, quote, I'm coming along great. And in any event, this is a judge who was familiar with the defendant, knew what his concerns were or his issues were. So it was not something that was new, correct? Well, I believe those were alcohol-related issues of the discussion. How are you doing in the context of alcohol rehab? I know he did some inpatient treatment prior to the guilty plea. And the judge was aware that the defendant had been in and out of the hospital? Yes, he had some court dates, and there were some continuances because of his unavailability, because of his health concerns, correct. But when you say an extended colloquy or any kind of, you know, beyond what we've already discussed, just a how are you doing, I'm doing great, what else is he going to say to the judge? But the judge was certainly aware that he had medical issues, he had alcohol-related issues, correct? Correct, correct. And at the conclusion of the motion to withdraw the guilty plea, you know, the judge said that, you know, I certainly acknowledge that he's taken these medications and that you have this medical condition, and he didn't, you know, completely 100 percent discount the effects of these conditions. His only finding was that it didn't rise to the level of severity that it made the plea involuntary. Counsel, the standard review here is abuse of discretion? That's correct. That occurs when the ruling is arbitrary, fanciful, or no reasonable person would agree with the trial court's ruling, right? That's correct. That's the standard that has to be met? Correct. But also, you know, if you look at the Seminole case of Davis, it says that if certain circumstances exist, then the defendant should be permitted to withdraw his guilty plea. And this case falls within those reasons that should require a trial court to allow the defendant to withdraw his guilty plea. So let's break it down. One of the bases for the claimed error is that there was an error in the factual basis, correct? Correct. And clearly there was an error in the factual basis. Yes, the staged damage is that. The defendant was not stopped in the act of driving, correct? Correct. What about the factual basis that the officer, Tinsley I believe it is, would testify that the defendant was in a traffic accident and left the scene? Wouldn't that imply that he was driving? If he was apprehended at his house, it also not only indicates he may not have been driving, but there's the question of was he intoxicated when he was driving? I mean, in the average factual basis, the state gets up there and says that the defendant was driving and he fled the scene. Okay? So does that not imply he was driving and that would stand that he wasn't stopped on the street? It implies that, yes. I mean, the factual basis would imply that he was driving. And we look at the inferences that can be drawn from the statement of what the officer says. We don't just look at what the officer says. We look at the inferences that can be drawn from that, correct? And whether or not we're going to uphold the trial court's decision, correct? Correct. But I'm not sure it's fair to rely on that inference and override this discrepancy in the factual basis. Would you agree? Go ahead. I'm sorry. And his assistant said he was not guilty of the offense of driving under the influence. Do we have, in reviewing whether or not the defendant should be allowed to withdraw his plea, we can look at the entire record to determine whether or not there's a factual basis, correct? Yes, you can look at that. Yes. And would that include the sworn report of a police officer that's in the file? I'm familiar with that report. And I don't know the answer, the exact extent of the record that can be relied upon to substantiate the factual basis of the plea, whether that's limited to testimony in a sentencing hearing or whether you can rely on an unsworn, I believe it was an unsworn statement by a police officer which described events that occurred prior to his apprehension. I would note that that affidavit or statement that you're speaking of does not address the question of where he was apprehended, whether he was pulled over at a traffic stop as represented on the factual basis or at his grandfather's house as he contends in his motions to withdraw. Well, this is from the report that's part of the record that the defendant got into a verbal altercation with another driver in the area of North Palm, Asbury Drive and Liberty Street, et cetera, and then it discusses that they had a verbal argument, the collision, and him taking off. Wouldn't that imply that those witnesses who were there, who were subpoenaed for trial, correct? Everyone showed up the last day when there was a plea agreement reached? I don't know the answer to that. I think both parties answered ready, and then the parties reported to the court there was a plea agreement. Yes. So those witnesses were there ready to testify. And the inference is that they testified consistent with what's in the report? Well, one of the basis for allowing a defendant to withdraw a plea is he has a defense worthy of consideration by a jury. I wasn't driving. That's the end point. Does he have a defense? What's his defense in light of what's in the record, what's in the report? Witnesses available to testify, a blood alcohol level of, I think it was .25. But is it appropriate to draw conclusions and reach inferences when he has a right to have these facts proven beyond a reasonable doubt? Well, you have an obligation to show that there was a viable defense in light of the record, including everything that's in the court file. And we have that in the DUI case. Where the factual basis indicated that he was pulled over in a traffic stop and he was taken to a hospital from the scene of the traffic stop and found to have a BAC of .25, he contends he was taken into custody at his grandfather's house. And there's a question of intoxication. At what point was he intoxicated? I mean, you can infer that there was a report to police that there was an altercation on the streets and that you can draw conclusions from that. But ultimately, the state has to prove beyond a reasonable doubt if it goes to trial the element of intoxication. Taking the defendant into custody, how is that relevant to whether or not he was in control of a motor vehicle somewhere in the state of Illinois? If he's been charged with being in control of that vehicle before he was taken into custody. In other words, if I kill someone, what difference does it make whether or not I'm arrested on my way home or arrested at home relative to whether or not I, in fact, killed someone? Well, in your example of a homicide offense, there's no element requiring you to be caught red-handed, as there is in a DUI. So this tends to impeach some of the witnesses, but how does it disprove the elements of the offense? An element is an actual physical control while intoxicated. So you're saying the factual basis didn't provide a concurrence of those elements. You can be drunk but not driving, you can be driving but not drunk. You're saying there was no concurrence of the elements on a factual basis? Correct. Essentially? Correct. And the record doesn't show exactly, at least the plea does not show precisely what time the accident took place, which would establish the driving, and exactly what time he was arrested at his grandfather's house. That's your contention, correct? Correct. So it would have been enough time for him to reach a level of alcohol from just below .08 to .25. Is that what you're saying? That's the defense? Let me, if I may find the page from the record. This is the impounded document of his evaluation of his alcohol assessment. Page IC5. Defender reports drinking a bottle of vodka following an accident he was involved in. So that would support a defense. He has stated that he drank sometime later. So it's the classic, I got home and drank about a bottle of grain alcohol or potato alcohol, and therefore I was drunk now but I wasn't drunk at the time I was driving? That's certainly an argument that could be made to a charge. I said it's a classic defense. He was represented by counsel at the time he fled. Correct. And the contention was that counsel was ineffective for not finding the error in the factual basis? I don't know that he actually raised an ineffective assistance of counsel. Couldn't he have to raise that because his lawyer stipulated to the facts? Yeah. Isn't a lawyer who stipulates to the facts bound by that stipulation? Not the lawyer, the party whose lawyer stipulates to the facts is bound by that stipulation. Isn't that correct? I know that counsel later indicated that she had discovered that discrepancy after she stipulated to it. Generally speaking, at a trial or at a plea, the party is bound by the stipulation entered into by his or her attorney, correct? Correct. So we have to establish that the attorney was ineffective in order to have relief here? No. We end up at the same place, vacating the guilty plea and demanding for a new trial under Davis where we say that he added defense to the charges. You know, if he's successful in bringing an ineffective assistance of counsel plea, then the ultimate remedy would be vacating the guilty plea because of counsel's ineffectiveness that led him to plead guilty. You get to the exact same place through Davis in those cases that discuss the grounds on which a defendant should be allowed to vacate a guilty plea. So I think that it's not actually essential to relieve that situation. Does Davis involve a stipulation that where the attorney or the defendant actually attempted to kind of withdraw the stipulation? I don't know the answer to that, but I would... I think I know the answer to that. I don't believe Davis did involve. I wouldn't be surprised if it did. Well, this is a different situation. This is a situation where the lawyer stipulates to those facts. Sure, but, you know, a defendant is bound by his attorney's stipulation, but the attorney later discovers she made an error. So too bad if your attorney made an error, you'd have to live with that for the rest of your life. That doesn't seem fair. You know, and we can bring justice to Mr. Huebner in this case by granting him relief, by allowing him to withdraw his guilty plea as opposed to or as an alternative to requiring him to plead ineffective assistance of counsel, having counsel represent him in that. You know, we get the same place. And that's one of the basis for allowing the defendant to withdraw a guilty plea, and that's to where the ends of justice will be better served by submitting the case to a jury. And that's the situation here that we have when you talk about the avenue to get into that place. What about your overarching argument that at the time of the plea proceedings, the defendant's mental and physical condition was such that he really had impaired his ability to make a knowing and voluntary plea? What's the gist of that? Well, you know, he testified that he was foggy and not feeling well. He'd been throwing up for two days. He was very ill. I believe he said at one point, I just want this to be over. You know, the judge who heard the motion to withdraw the guilty plea said, I don't find that that makes it involuntary. And he made credibility assessments and said it doesn't make it involuntary. But that doesn't mean he wasn't seriously ill. I mean, we have medical confirmation that he suffered from these maladies and that certain times they can affect his judgment. What about that? I mean, it's always the age old question. The judge, if he follows the script, asks questions that touch on the defendant's ability to make a knowing and voluntary plea of guilty. Is it not proper for the judge in this kind of a motion to withdraw to make credibility assessments? Absolutely it is. The judge was president. It's kind of like credibility of witness as a trial. Your honors won't overturn that and defer to the trial court. Exactly. I think it's the same general principle here. But I think it's fair to say that it affects this case where perhaps he was not as in tune as he would have been on a good day. And he might have caught the fact that there was a discrepancy in the factual basis. And I think that's something that the court could consider. And that's how I argued in my brief that that's relevant in this case. That, you know, if you don't find it rises to the level of making the plea involuntary, at least you can find that he was not so fully possessed in his faculties that he is responsible for his trial counsel's mistake. And yet, didn't the trial judge, I think, characterize the defendant's testimony as incredible? I don't recall him using that word, but he may have. In other words, if the trial judge hearing the motion doesn't believe the defendant, don't we have to defer to that assessment? Well, I don't think the trial judge said, I don't believe you at all. I think he said, I acknowledge that you were ill and you were taking these medications, but I don't find that they rise to the level of making the plea involuntary. And I don't think it's an all or nothing. It's not a binary finding by the court. And I think you can have a middle ground. And, you know, the judge recognizes that, okay, yeah, you were sick that day, you were taking Dilaudid, you were taking anti-anxiety medication. And I think that's relevant on the question of should he have interjected during the factual basis and said, wait a minute, wait a minute, I was at my grandfather's house, I wasn't stopped in a traffic stop, which trial counsel later learned to be the case. Just one further point to follow up on Justice Hudson's question. After the parties questioned the defendant, the trial judge asked the defendant a fairly lengthy series of questions on his own, correct? Yes. And then he made his ruling. So the judge asked about the medication, the specific effects of medication, et cetera, correct? Yeah, which is what we had discussed earlier about, was he familiar with these medications that he had taken the night before? Right. Yes. Yeah, he did discuss that with them. But, you know, I don't recall the trial judge ever saying, I just find that you were perfectly fine and hearty and ready to go. Thank you, sir. Your time is up. You'll have a chance to make rebuttal. Thank you very much. Mr. Kinsella. Thank you. And briefly, I'd just like to thank the court for granting me the continuance in this matter. May it please the court, counsel. My name is Sean Kinsella. I represent the people that I believe in this matter, and I work for the DuPage County State's Attorney's Office. The defendant in this case, Mr. Huebner, would have the court believe that on January 7, 2014, his plea agreement was unknowing and involuntary, and he bases that on many things, the first of which was a misrepresentation of facts or a misapprehension of facts. This misapprehension, however, does not follow the actual plea itself. He would have you believe that because there was a misstatement in the factual basis by the state, that this somehow rendered the plea unknowing or involuntary. And you acknowledge that there was a misstatement? He was actually arrested outside the vehicle at his grandfather's house or his father's house? What I would say is that the state's representation that he was later arrested at his grandfather's house does not directly contradict what is in the factual basis. Certainly, I don't want to speculate on what happened, but there's nothing saying he was inside his house watching television. Whose responsibility is it to correct a misrepresentation when one is made? It would be the party making that misrepresentation. So what is the accurate statement? I apologize. What's the accurate statement? The accurate statement was that the defendant was found at his grandfather's house. I can't speculate that he was seated in the car in the driveway, that he was seated in the car on the street, he was outside in the front yard. We just don't know. But the facts here are that he... And the only way to know is to have a trial, apparently, or is it in the police reports? It's certainly contained within the factual basis. The factual basis states that the defendant was in a car accident and the defendant fled the scene of that car accident. When should the state have made the correction? The state, I believe, made the correction when the state realized what was going on, which was at the sentencing hearing. Certainly, whatever misspeaking or misstatement the state made in the factual basis was never brought to the attention. It was never brought out. It was the state that actually fronted that at the sentencing hearing. And it was only realized after the state ordered the transcript? That's correct. But again, I would contend that that statement by the state does not contradict what's contained within the factual basis. So what's specifically about the factual basis that did go in at the time of the plea, which is the critical time here, that's where he's contesting, and the motion to withdraw? What was the factual basis of the driving and the alcohol consumption such as would support it? Notwithstanding the fact that he was not arrested on the street. The factual basis was that Officer Tinsley would testify that the defendant was involved in a car accident with another vehicle. The driver of that vehicle phoned 911, reported the defendant, reported the defendant's vehicle, and Officer Tinsley shortly thereafter found the defendant at his grandfather's house. Did Tinsley say it? How do we know that he was drinking? I believe that the factual basis specifically states Officer Tinsley receives the 911 dispatch shortly thereafter he locates the defendant. There is nothing in there to suggest that an hour had passed, Officer Tinsley did not go to the scene of the accident and assess the scene of the accident and then follow up with the defendant. The factual basis states that shortly after receiving the dispatch, he located the defendant's vehicle. Okay. Then later on, arrest him at the grandfather's house? Yes. Okay. But how do we know that he was intoxicated at all? How does that come into the record? The sworn report indicates a conversation between the driver of the vehicle and the defendant. The testimony of Officer Tinsley, and that was offered at the factual basis, stated that based on his observations, based on his conversation with the defendant, he believed him to be under the influence of alcohol. That was stated at the time of the police? Yes. And the defendant would have you believe that this. . . If I could have something clarified, was it the other person driving the other car who had this opinion, or was it the police officer's opinion based upon his conversation with the other driver? It was the, I believe it was both. I believe the driver in the officer's sworn report made reference to the defendant. The other driver made reference to his opinions of the defendant at the scene, and then Officer Tinsley, as proffered in the factual basis, made his observations of the defendant back at the grandfather's house. Now, the factual basis, it certainly doesn't require that the police see the defendant in the act of driving. And so where the statement doesn't contradict what happened and what is said in the factual basis, and the officer follows up with the report from the other driver, there doesn't seem to suggest any defense worthy of consideration. The defendant, the factual basis is applicable to the plea only in the sense that it would render the plea unknowing or involuntary. Well, Mr. Kirkham was arguing that he could have been at home consuming a bottle of vodka or other spirits. Is there anything in the record that would suggest that might have happened? I don't believe so. In fact, I believe the record directly contradicts that. It states that the accident occurred as the defendant fled the scene, the 911 call was placed. As Officer Tinsley received that, shortly thereafter, he stopped the defendant outside of the grandfather's house. And there had been full discovery in the case? There had been. And certainly no argument was made in the motion to withdraw hearing to suggest that there was any missing discovery, that there was any unknown facts. The defendant himself could have testified in the motion to withdraw hearing that he was seated inside his house, that he had returned home and consumed alcohol. But there is no statement of that either in the motion to withdraw or was testified to at the hearing. The inspector was never raised at all by the defendant, you're saying? Yes, correct. And as the case law states, the defendant bears the burden of establishing that by objective standards, that his misapprehension was justified at the hearing. And he simply never raises this argument. His argument is that he didn't understand and didn't know what was going on at the time of the plea because he was so ill. But when the record is reviewed in that matter, there's nothing to suggest that. He answers the judge's questions appropriately. He answers them in the correct manner. He never asks the judge to repeat anything. He never says he doesn't understand anything. And the judge specifically acknowledged that he asked him a series of yes questions and he threw in a different question, as was his practice, specifically to make sure that he understood that he was followed. What about this evidence, the doctor's affidavit, that he was under medications and he didn't understand what he was doing? How does that tie in with this? Again, as Justice Bruquette pointed out, these were not new medications to him. The evidence that came in from the doctor was a doctor that had seen the patient, I believe he said, four times since the plea agreement was entered into. The defendant testified to a couple of stints in the hospital, but he also testified that he was never given any new medication, that they believed that his problem was not so severe that it couldn't be controlled by his diet. And so the circumstances of his medical conditions that he had been dealing with, I believe the pancreatitis was five years prior to the arrest and the GERD was from birth, has not changed. And there is nothing in the record to suggest that anything that was going on with the defendant at the time of the plea was anything other than normal. He even has a conversation with the judge afterwards in which the judge asks him when his next appointment with pretrial services is. And he is coherent enough and he is understanding of what the judge is asking him enough to say, I don't have another appointment. They call me, they tell me to come in. Didn't he assert that he didn't remember the plea proceedings? He initially asserted that he didn't remember the plea proceedings on direct examination. On cross-examination, he acknowledged remembering the judge. He acknowledged remembering his attorney. He acknowledged remembering the state. He said he understood the nature of the charges. He understood the minimum and maximum penalties. And the 402 admonishments are in place specifically for those reasons, to make sure he understands what he's giving up and what the penalties are. And he acknowledged all of those things on cross-examination. With respect to the comments that you made earlier that there was no testimony about his defense. Yes. He was asked about the defense and it was an objection from the state. And then he essentially was blocked from going further into his defense. I'm looking at the record, page 121. Now, Mr. Huebner, you pled guilty on January 7th, 2014 to driving under the influence of alcohol on February 24th, 2012. Are you guilty of that charge? Answer, no. Objection. The state objected to his attempt to establish that he had a defense. So how can you say that he has the burden where he was blocked from establishing his defense? The defendant was aware of the discovery. He was aware of any possible. I'm talking about his testimony here. Why did the state object? I believe the state objected because it's not relevant as to whether the defendant was mentally coherent at the time of the plea. In considering the motion to withdraw, they were considering the defendant's mental and physical status at the time of the plea. The defendant certainly, as the judge suggests, that he believed it was a case of buyer's remorse. And certainly these standards exist so we don't allow defendants to come in to plead guilty, see what their sentences are, and then say, I'm in fact not guilty because they simply don't like what they've received. Wasn't there a motion to withdraw the plea filed prior to the sentencing in this case? There was a motion. He wasn't trying to game the system. He wanted to withdraw his plea. He didn't know what he was going to get. He could have gone to the penitentiary. He testified in the motion to withdraw hearing that he didn't know why he did what he had done, that certainly he understood as he was admonished the minimum and maximum penalties. The point is that he didn't wait until seeing what the sentence would be before he moved to withdraw his plea. The judge postponed hearing on the motion to withdraw the plea, correct? That is correct. But that certainly doesn't disqualify that he may have just decided he wasn't happy with it. Just try to be accurate when you're representing what the record is. The record is he filed a timely motion to withdraw the plea. He wasn't trying to game the system, find out what the sentence was before he moved to withdraw the plea. I believe that I was merely indicating, and I do apologize, that these are the kinds of problems that could occur from defendants simply pleading guilty and then deciding that they're unhappy with what happens after that. Certainly in this case, the defendant understood everything that was happening at the time of the plea. The trial court, who was in a position to observe the defendant, to observe his demeanor, to have a conversation with him, was in the best position to make that determination. Did the trial court make any credibility findings relative to the defendant's truthfulness and accuracy? The trial court did, in fact. In the ruling in the motion to withdraw, the trial court specifically went as far as to say he did not believe the defendant was laboring under a fog, as the defendant indicated. And then he went on to say, I believe this is simply a case of buyer's remorse. And the trial court being in that position, I believe, makes the best determination for that. If there are no other questions, we would just ask that you affirm the defendant's conviction. Is there anything in the record to indicate that the trial judge considered the defendant's claim that he was not guilty? He had a valid defense to the charge. The trial judge didn't make any specific reference to the claim that the defendant was not driving. The trial judge made his reference to what was raised in the motion to withdraw, was that at the time of the guilty plea, he unknowingly and involuntarily entered that plea. Thank you. Mr. Kirkham? Thank you. Just a couple of small quick points. You know, there was some questioning and discussion of did the officer speak with the other driver? And there's nothing in the record that I recall at all. There's nothing on a factual basis about that. The factual basis says the other driver called 911 and gave a description of the vehicle. There's no indication that the other driver had any personal contact that would indicate any kind of intoxication or not intoxication. The notion, too, that about who has the obligation to correct a mistaken factual basis. I mean, the State didn't front this. The defendant got out in front of this. It was contained in a motion to withdraw his guilty plea. He made this allegation prior to sentencing. It was at sentencing when the State acknowledged the mistake. Remember when Justice Burkett asked Mr. Kinsella regarding the objection that followed the question relating to whether or not he was guilty of the offense? Yes. Did the court sustain or overrule the objection? Let me grab my copy of the transcript, if you'll. Justice Burkett, you said that was page 129, if I got it wrong. The court asked what's the relevance. And defense counsel answered, Your Honor, with respect to the basis for withdrawing the plea, I believe the case law mentions misapprehension of fact with respect to whether or not the defendant was guilty of the offense. And then there's actually a factual basis for the guilty plea. And then there's some colloquy between the trial judge. And the judge says his defense attorney in this one stipulated to it and presumably knew the facts and didn't object. And then counsel says, right, could potentially serve as an ineffective assistance claim, which prompted my earlier questions to you. And then the court says, quote, highly unlikely, but in any event proceed. That was the court's ruling. He didn't block further questioning on it. He just said proceed. But I think that if you're defense counsel in that case and you're going in that direction and making that argument. Assuming the words that he sustained objection, was there an offer of proof? Maybe. The defendant did file an affidavit that was attached to this motion to withdraw a guilty plea. In which on page 178 of the common law record in the affidavit of Mr. Hutner, he said the prosecutor stated that I was stopped by police driving a car. However, I was not stopped by police driving. Instead, the police came to my grandfather's house, which is where I got arrested. I am not guilty of driving under the influence of alcohol and I want a trial. So I believe that's the clearest statement by the defendant. So are you suggesting that that's the public offer of proof? I know rule 402 requires that when there are matters outside the record that are part of a motion to withdraw a plea or reconsider a sentence, an affidavit is required. And that was fulfilled here. And I think it's the functional equivalent. Well, when I said equivalent, I didn't mean that they came in the same ribbon wrapped package. I was referring to the quality and the nature of the evidence that was would have been presented in an offer of proof was the same that was presented in the affidavit. In other words, I don't really care what the format was, is what is contained in the affidavit. What would have been in your estimation an offer of proof? That's a hard question to answer because as we know in these guilty plea cases, we have such a scant record and I don't have access to the discovery. I don't know what an offer of proof by a defense counsel would have consisted of. All I know is that what we have in the record and we have an affidavit from Mr. Kutner contained in that statement. So let me put it a different way then. Is the affidavit the only evidence of why the defendant has the opinion that he's not guilty of driving under the influence? Well, I think that you can look at the entire record and you can see that in his motion to withdraw his guilty plea, which was filed prior to sentencing, he contains that basis. It's a pleading, isn't it? It is, but you're asking, you know, what is in the record. I asked for evidence. I didn't ask for allegations. The point is that the affidavit does not rebut the record in terms of whether or not he was or was not. You're letting the cat out of the bag. Sorry, Your Honor. Well, we have an allegation in the motion. We have the State acknowledging the essential correctness of that and an affidavit from the defendant. I mean, in a guilty plea case here, in a misdemeanor case, that's pretty good grist to go on here.  Thank you. We will take the case under advisement at disposition of the record. Thank you, Your Honor. Period.